UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JOE WHITE, KATHY WHITE,  )
GINA HARPER and CHARLES HARPER  )
  )
     *Plaintiffs*,  )
  )
v.  )  No.  3:14-CV-00505
  )
CITY OF GATLINBURG  )
  )
     *Defendant*.  )

## <u>MEMORANDUM OPINION</u>

Plaintiffs, Joe and Kathy White ("Whites") as well as Charles and Gina Harper ("Harpers"), bring this action against the City of Gatlinburg ("Gatlinburg") alleging disability discrimination and numerous state law claims after a Gatlinburg trolley driver refused their request to be returned to their vehicles.

Before the court is Gatlinburg's motion for summary judgment [R. 32]. Gatlinburg contends that it is entitled to judgment as a matter of law on all claims because the Whites and Harpers have failed to produce evidence demonstrating a genuine issue of material fact for their discrimination claim as well as their state law claims. Gatlinburg also asserts immunity for several of the state law claims under the Tennessee Governmental Tort Liability Act.

The Whites and Harpers responded in opposition [R. 39]. The Whites and Harpers contend that a jury should decide whether Gatlinburg discriminated against them because there are issues of material fact regarding both their disabilities and state law claims.

# I.  STATEMENT OF FACTS

In August 2014, Joe and Kathy White, Charles and Gina Harper, and others traveled from their home in Arkansas for a family vacation in Crossville, Tennessee.  On August 6, 2014, they decided to visit Gatlinburg, Tennessee.  Driving in separate cars, the Whites and Harpers arrived at the Gatlinburg Welcome Center trolley stop, where they searched for unoccupied handicap parking spaces.  Seeing no available spaces, the Whites and Harpers drove down the hill to the Gatlinburg Welcome Center building where they parked and went inside.  Once inside, the Whites and Harpers approached the ticketing counter and spoke with Welcome Center attendants about purchasing passes for the Gatlinburg trolley.  The Whites and Harpers explained to the attendants that there were no handicap parking spaces at the Welcome Center trolley stop and they were forced to park down the hill at the Welcome Center building.  Due to their parking situation, Mrs. Gina Harper inquired whether they could be picked up at the Welcome Center building rather than the dedicated trolley stop.  The attendants responded that the trolley would pick them up from the Welcome Center building and would drop them back off there once their visit was complete.  The Whites and Harpers then purchased their trolley passes.

About the same time as they were purchasing the tickets, Mr. Charles Harper went outside the Welcome Center and hailed an incoming trolley to ask the driver if they could be picked up at the Welcome Center building instead of the dedicated trolley stop.  The trolley driver agreed to pick them up after first obtaining passengers from the dedicated trolley stop.  Once the trolley driver loaded the other passengers, he returned to the Welcome Center building, picked up the Whites and Harpers, and proceeded into downtown Gatlinburg.

After unloading from the trolley near the Ripley's Aquarium, the Whites and Harpers spent several hours shopping, eating, and walking around downtown Gatlinburg.  Later that day,

2

the Whites and Harpers returned to the Ripley's Aquarium trolley stop and loaded on to Gatlinburg Trolley No. 29 to return to their vehicles. The driver of Trolley No. 29, Mr. Clarence Hatfield drove past the Welcome Center building and to the dedicated trolley stop as part of the trolley's fixed route.

Once the other passengers unloaded, Mr. White approached the driver, Mr. Hatfield, and asked if he along with others in his party could be taken back down the hill to the Welcome Center building where their vehicles were located. Mr. White explained that he and others in his party were disabled and unable to walk down the hill. Even though Gatlinburg generally grants such accommodations, Mr. Hatfield failed to contact his supervisor for permission to deviate from the fixed route. Mr. Hatfield instead declined their request and mistakenly said that he could only take "people in wheelchairs or electric carts" to the Welcome Center building. Mr. White explained that the Welcome Center attendants assured them that they would be returned to their vehicles, but Mr. Hatfield again declined. Mr. White then returned to his seat and Mr. Harper approached Mr. Hatfield and asked that they be taken back to the Welcome Center building because he along with Mrs. Harper were disabled. Mr. Hatfield, however, again declined the request. Seeing that they were not going to be dropped-off at the Welcome Center building, the Whites and Harpers disembarked the trolley at the trolley stop and walked down the hill to their vehicles at the Welcome Center building.

While en route, Mr. White stumbled on the pavement and injured his back and neck. He later sought medical attention in a Dickson, Tennessee emergency room on the way back to Arkansas. Mr. White has been the owner and operator of Whites Lawn Services for twelve years. He claims that he is now unable to work because he can no longer mow for his business due to his neck and back injuries.

In addition to Mr. White's injuries, Mrs. White and Mrs. Harper claim that they were injured from walking down the hill to the Welcome Center building. Mrs. White states that she suffered injuries to her right leg and soreness in her right arm from gripping the rail on the way down the hill. Mrs. Harper says that she suffered back spasms and a swollen left knee as a result from walking back to their car. Mrs. Harper sought treatment for her back spasms at Crossville Medical Clinic on August 7, 2014—one day after the alleged incident. Further, Mrs. Harper was treated for her swollen knee at Velocity Care in Little Rock, Arkansas after returning home and was referred to an orthopedist.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Co., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Keifer*, 301 F.3d 937, 942 (6th Cir. 2002). Courts may not resolve genuine disputes of fact in favor of the movant. *Tolan v. Cotton*, 134 S.Ct. 1861, 1863 (2014) (vacating lower court's grant of summary judgment for "fail[ing to] adhere to the axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor") (internal quotations and citations omitted).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477

U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### III. ANALYSIS

The Whites and Harpers argue that Gatlinburg violated the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act") by denying their request to be driven back to their vehicles at the Welcome Center building. Moreover, the Whites and Harpers also assert numerous state law claims, including: deceptive practices under the Tennessee Consumer Protection Act; common law breach of contract; detrimental reliance; negligence by a common carrier; premises liability; and negligent hiring, supervision, and retention. The Court will examine each claim for relief in turn, beginning with the claims under the ADA and Rehabilitation Act.

## A.  Overview of ADA and Rehabilitation Act Analytical Framework

In its analysis, the Court will review the Whites and Harpers' ADA and Rehabilitation Act claims together.  Both the ADA and the Rehabilitation Act prohibit discrimination against a qualified individual with a disability. *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 452 (6th Cir. 2008). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act likewise states that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).  The Sixth Circuit has held that because the purpose, scope, and governing standards of both "acts are largely the same, cases construing one statute are instructive in construing the other." *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 460 (6th Cir. 1997). *See S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008) (citing *Thompson v. Williamson Cty.*, 219 F.3d 555, 557 n. 3 (6th Cir. 2000).  The Court will thus analyze both claims together.

## B.  The Whites and Harpers Fail to Establish That They Are Disabled Under the ADA and Rehabilitation Act

The Whites and Harpers contend that the City of Gatlinburg was required to make a reasonable modification to its "policies, practices, and procedures" to accommodate their request to be returned to their vehicles.  To prove discrimination under either statute, plaintiffs must show that: 1) they have a disability; 2) they are otherwise qualified for participation in the relevant program; and 3) they are being excluded from participation in, being denied the benefits

of, or being subjected to discrimination because of their disability. *Anderson v. City of Blue Ash*, 793 F.3d 338, 357 (6th Cir. 2015) (citing *Tucker v. Tenn.*, 539 F.3d 526, 532 (6th Cir. 2008)).

To establish their first element, the Whites and Harpers must demonstrate that they have a disability. The ADA and Rehabilitation Act define "disability" as: (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual," (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1) (A)-(C); 42 U.S.C. § 705(20)(B). There is no bright-line rule to determine whether someone is disabled as Congress intended that the existence of a disability be determined on a case-by-case basis. *Toyota Motor Mfg., Ky, Inc. v. Williams*, 534 U.S. 184, 198 (2002). To survive summary judgment, however, plaintiffs must come forward with medical evidence supporting their disability. *See Neely v. Benchmark Family Services*, 2016 WL 364774, at *4 (Jan. 26, 2016). In fact, the Sixth Circuit recently affirmed a district court's grant of summary judgment where the plaintiff was not considered disabled under the ADA because he failed to submit supporting medical evidence of an alleged impairment. *Id.* Likewise, in this case, the Whites and Harpers assert that they all are disabled and have physical impairments which substantially limit them in major life activities; yet, they fail to put forth any evidence that would allow a rational trier of fact to conclude that they have a disability.

Conversely, the Whites and Harpers assert that the more relaxed standards under ADA Amendments show that they have a disability. In 2008, Congress amended the ADA to broaden the scope of what constitutes a disability. *See* 42 U.S.C. § 12102(1)(A). Although the amendments eased the burden required for plaintiffs to establish a disability, a burden still remains no less. In fact, Congress expressly retained the "substantially limits" modifier for "one or more major life activities." *See* 42 U.S.C. § 12102(1)(A). In this case, the Whites and Harpers

failed to carry that burden because they rely on their own statements without any corroborating medical evidence. *Neely v. Benchmark Family Services*, No. 15-3550, 2016 WL 364774, at *4 (Jan. 26, 2016). Viewing the record in a light most favorable to the Whites and Harpers, with the exception of their own statements, there is no evidence in the record that shows the Whites and Harpers are substantially limited in a major life activity.

Further, the Whites and Harpers' own statements regarding their disabilities constitute hearsay because they are offered for the truth of the matter asserted. "It is well established that a court may not consider hearsay when deciding a summary judgment motion." *Tranter v. Orick*, 460 F. App'x 513, 514 (6th Cir. 2012). Accordingly, without any admissible evidence establishing their disabilities, the Whites and Harpers' claims for disability discrimination cannot stand. Therefore, Gatlinburg is entitled to summary judgment on the discrimination claims.

### C. **Gatlinburg is Immune from the Unfair or Deceptive Practices Claim**

Gatlinburg also seeks summary judgment on the Whites and Harpers' claims of unfair and deceptive practice under the Tennessee Consumer Protection Act. Gatlinburg argues that it is immune from the Whites and Harpers' claims pursuant to the Tennessee Governmental Tort Liability Act ("GTLA"), which states that "all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tenn. Code. Ann. § 29-20-201(a).

Specifically, the GTLA "removes immunity for 'injury proximately caused by a negligent act or omission of any employee within the scope of his employment . . .'" *Johnson v. City of Memphis*, 617 F.3d 864, 872 (6th Cir. 2010) (quoting Tenn. Code Ann. § 29-20-205). Thus, the only persons for whom Gatlinburg may be liable are those who are defined as employees under

the GTLA.  A person is considered an employee for purposes of removing immunity if a court "specifically finds that all [five] of the [following] elements exist:"

> (1) The government entity itself selected and engaged the person in question to perform services;

> (2) The government entity itself is liable for the payment of compensation for the performance of such services and the person receives all of such person's compensation directly from the payroll department of the governmental entity in question;

> (3) The person receives the same benefits as all other employees of the governmental entity in question including retirement benefits and the eligibility to participate in insurance programs;

> (4) The person acts under the control and direction of the governmental entity not only as to the result to be accomplished but as to the means and details by which the result is accomplished; and

> (5) The person is entitled to the same job protection system and rules, such as civil service or grievance procedures, as are other persons employed by the governmental entity in question.

Tenn. Code Ann. § 29–20–107(a). Tennessee requires "strict compliance" with each element for purposes of removing immunity. *Baker v. Snedegar*, 2013 WL 5568424, at *5 (Tenn. Ct. App. Oct. 8, 2013).  Based on the record in this case, Gatlinburg cannot be liable for the acts of the Welcome Center employees because they are not City employees.  The GTLA removes immunity only for the acts of governmental employees; nowhere does the act remove immunity

for nonemployees. *See* Tenn. Code Ann. § 29–20–107(a). The Court therefore finds that Gatlinburg remains immune from the unfair or deceptive practices claim.

Even though the Welcome Center employees are not employed by Gatlinburg, the Whites and Harpers claim that the Welcome Center employees had apparent authority to act on Gatlinburg's behalf. In Tennessee, plaintiffs must prove the following elements to establish apparent authority: (1) the principal knew or negligently acquiesced in the agent's exercise of authority; (2) the third person had knowledge of the facts and a good faith belief that the apparent agent possessed such authority; and (3) the third person relied on this apparent authority to his or her detriment. *Boren ex rel. Boren v, Weeks*, 251 S.W.3d 426, 432–33 (Tenn. 2008) (quoting *White v. Methodist Hosp. S.*, 844 S.W.2d 642, 646 (Tenn. Ct. App. 1992)). Notably, apparent authority is established through acts of the principal rather than those of the agent. *Id.* at 433. Accordingly, where the principal, by his own acts or conduct, has clothed the agent with the appearance of authority to act on his behalf, he is estopped from denying liability for the agent's acts within that authority. *Milliken Grp., Inc. v. Hays Nissan, Inc.*, 86 S.W.3d 564, 569 (Tenn. Ct. App. 2001).

The Whites and Harpers claim that the Welcome Center employees had apparent authority to bind Gatlinburg to alter its trolley drop-off location. The Whites and Harpers rely on the Welcome Center employees' statements that it would be "no problem" for the trolley driver to pick them up and drop them off at the Welcome Center building, but fail to show any evidence or conduct by Gatlinburg to create an agency relationship. It is clear from the undisputed material facts, however, that Gatlinburg did not clothe the Welcome Center employees with apparent authority. There is no evidence in the record to establish that Gatlinburg had the right to control or exercised actual control over the Welcome Center employees' conduct. Therefore,

even viewing these facts in a light most favorable to the Whites and Harpers, Gatlinburg remains immune from the unfair or deceptive practices claim and is entitled to summary judgment.

**D.** **No Contract Ever Existed Between the Parties**

Gatlinburg is also entitled to summary judgment for the Whites and Harpers' breach of contract claim. After reviewing the undisputed facts and applicable authority, no contract ever existed between Gatlinburg and either the Whites or the Harpers. In Tennessee, "a contract can be express, implied, written, or oral, 'but an enforceable contract must result from a meeting of the minds in mutual assent to terms, must be based upon sufficient consideration, must be free from fraud or undue influence, not against public policy and must be sufficiently definite to be enforced.'" *Thompson v. Hensley*, 136 S.W.3d 925, 929-30 (Tenn. Ct. App. 2003) (quoting *Klosterman Development Corp. v. Outlaw Aircraft Sales, Inc.*, 102 S.W.3d 621, 635 (Tenn. Ct. App. 2002)).

In this case, no express contract ever existed between the parties. The Whites and Harpers claim that when they purchased their trolley passes, they entered into a contract with Gatlinburg to transport them back to their vehicles; however, no written language on the actual tickets suggest that passengers may dictate that the trolley deviate from its fixed route. Thus, no express contract existed between Gatlinburg and the Whites and Harpers.

In addition, no implied contract ever existed between the parties. Tennessee recognizes two types of implied contracts: contracts implied in fact and contracts implied in law. *Thompson v. Hensley*, 136 S.W.3d 925, 930 (Tenn. Ct. App. 2003) (citing *Angus v. City of Jackson*, 968 S.W.2d 804, 808 (Tenn. Ct. App. 1997). A contract implied in fact is similar to an express contract as it is "one that 'arises under circumstances which show mutual intent or assent to contract.'" *Givens v. Mullikin*, 75 S.W.3d 383, 407 (Tenn. 2002) (quoting *Angus*, 968 S.W.2d at

808). Unlike an express contract where the parties assent to the terms through their words, writings, or some other form of expression, "the conduct of the parties and the surrounding circumstances show mutual assent to the [contract's] terms . . . ." *Thompson*, 136 S.W.3d at 930. In this case, nothing in the record shows that an implied contract ever existed between Gatlinburg and the Whites and Harpers. The trolley passes were not sold by Gatlinburg employees. Moreover, while Mr. Harper secured a ride from the Welcome Center building to downtown Gatlinburg, there is no evidence that the Whites and Harpers received any assurance from a Gatlinburg employee that the trolley would deviate from its fixed route and drop them back off at their vehicles. Therefore, no implied contract existed between the parties.

Since no express or implied contract ever existed between the parties, Gatlinburg is therefore entitled to summary judgment for the breach of contract claim.

### E. <u>The Whites and Harpers Cannot Show Detrimental Reliance</u>

The Whites and Harpers claim that Gatlinburg is liable to them under the theory of detrimental reliance—which is also called the doctrine of promissory estoppel. *Calabro v. Calabro*, 15 S.W.3d 873, 879 (Tenn. Ct. App. 1999). To prevail under promissory estoppel, plaintiffs must show that "(1) a promise was made; (2) the promise was unambiguous and not unenforceably vague; and (3) they reasonably relied upon the promise to their detriment." *See Rice v. NN, Inc. Ball & Roller Div.*, 210 S.W.3d 536, 544 (Tenn. Ct. App. 2006); *Calabro*, 15 S.W.3d at 879; *Amacher v. Brown–Forman Corp.*, 826 S.W.2d 480, 482 (Tenn. Ct. App. 1991); *Wilson v. Price*, 195 S.W.3d 661, 670 (Tenn. Ct. App. 2005). Granting promissory estoppel is rare in Tennessee because courts limit its application to exceptional cases. *Barnes & Robinson Co., Inc. v. OneSource Facility Services, Inc.*, 195 S.W.3d 637, 645 (Tenn. Ct. App. 2006). The Whites and Harpers claim that they were promised by the Welcome Center employees—who are

not City employees—to be returned to their vehicles at the conclusion of their visit. However, the Whites and Harpers cannot show that they detrimentally relied on any sort of promise made by Gatlinburg employees at the time they purchased their trolley passes. Further, the Whites and Harpers cannot show that they detrimentally relied on a promise by the trolley driver upon boarding Trolley No. 29 because they only requested that the trolley deviate from its fixed route upon their return to the Welcome Center trolley stop—which had already passed the Welcome Center building. Because the Whites and Harpers cannot show that they relied on any promise from Gatlinburg employees, Gatlinburg is thus entitled to summary judgment for the detrimental reliance claim.

### F. <u>Gatlinburg Did Not Violate its Duty as a Common Carrier</u>

The Whites and Harpers claim that the City of Gatlinburg violated its duty as a common carrier by failing to drop the parties off at their vehicle. In Tennessee, plaintiffs must prove the following for a negligence claim: (1) defendant had a duty of care to the plaintiffs, (2) defendant breached that duty of care, (3) defendant's actions were the cause in fact of the plaintiffs' injuries, (4) defendant's actions were the proximate or legal cause of the plaintiffs' injuries, and (5) plaintiffs suffered damages as a result of the defendant's actions. *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 206 (Tenn. 2012). Common carriers, however, owe a heightened duty of care that requires "the utmost diligence, skill, and foresight to provide for their passengers' safety." *White v. Metro. Gov't of Nashville*, 860 S.W.2d 49, 51, 52 (Tenn. Ct. App. 1993). Even though they owe a heightened duty, common carriers are not insurers of their passengers' safety. *Id.* (citing *Schindler v. S. Coach Lines, Inc.*, 217 S.W.2d 755, 779 (Tenn. 1949)). Passengers must observe their surrounding conditions and "protect themselves from risk and hazards that ordinarily accompany the conveyance they are using." *Id.* Here, Mrs. White and Mr. Harper

13

cannot prove the essential elements for negligence because they were not injured; neither received any form of medical treatment after walking down the hill to the Welcome Center building.

Further, the Whites and Harpers' claims fail as a matter of law because Gatlinburg is not obligated to protect them until they reach their final destination. Tennessee does not impose a duty on common carriers to ensure that adult passengers arrive safely at their destination after exiting a vehicle. The only context where a common carrier's duty goes beyond dropping off passengers in a safe place is the relationship between school bus drivers and underage children. In *Bowers by Bowers v. City of Chattanooga*, the Tennessee Supreme Court recognized this special relationship by stating that "the zone or area of legal responsibility for care of immature school children extends beyond the mere landing of the child from the bus in a place safe in itself, and includes the known pathway which the children must immediately pursue." 826 S.W.2d 427, 432 (Tenn. 1992). The court further noted that "[i]t has been suggested that requiring a bus driver to know precisely where all children live would impose an enormous responsibility. However, all that is required is that the driver know which direction children normally go when they get off the bus." *Id.*

*Bowers* provides some guidance to this case because the Whites and Harpers are essentially asserting that the common carrier duty owed to them goes beyond what is afforded to underage school children. *Id.* Specifically, the Whites and Harpers assert that Gatlinburg is liable for injuries they sustained while walking back to their vehicles: Mr. White claims that he stumbled on the sidewalk and was seriously injured and Mrs. Harper states that she suffered back spasms as well as a swollen left knee from the hill's incline. Under *Bowers*, school bus drivers can satisfy their duty by knowing which direction a child normally goes when they get off the

14

bus; however, the Whites and Harpers assert that Gatlinburg is liable for their injuries sustained while walking back to their vehicle—which is far removed from the trolley driver's view and control. The trolley driver's duty to the Whites and Harpers ended when they arrived at the Welcome Center trolley stop and safely exited the trolley without injury; it was then up to the White and Harpers to "exercise[] ordinary care for their own safety" in returning to their vehicles. *See White v. Metro. Gov't of Nashville*, 860 S.W.2d 49, 52 (Tenn. Ct. App. 1993). It is clear from *Bowers* as well as other relevant case law that Tennessee does not extend a common carrier's duty to ensure that its adult passengers arrive at their final destination upon safely exiting a bus or trolley; therefore, Gatlinburg is entitled to summary judgment

### G. The Claims of Premises Liability, Negligent Hiring, and that Trolley No. 29 was Not Readily Accessible are Waived Under  Local Rule 7.2

Based on their Response to Defendant's Motion, the White and Harpers abandoned their claims for premises liability, negligent hiring, and that Trolley No. 29 was inaccessible. This Court's local rules provide that failure to respond to a motion is deemed to be a waiver of any opposition to the relief sought. E.D. Tenn. LR 7.2. This waiver occurs both where a party expressly concedes a point and where a party fails to respond to arguments made by its opponent. *Taylor v. Unumprovident Corp.*, 2005 WL 3448052 at *2 (E.D. Tenn. Dec. 14, 2005) (citing *Guster v. Hamilton Cnty. Dept. of Ed.*, 2004 WL 1854181 at *7 (E.D. Tenn. Mar. 2, 2004) (holding an argument not addressed in the responding party's brief is deemed waived). Since the Whites and Harpers did not respond to Gatlinburg's specific arguments regarding premises liability, negligent hiring, and Trolley No. 29's accessibility under 42 U.S.C. § 12142(a), they have waived any opposition to Gatlinburg's motion and those claims are dismissed.

## IV. CONCLUSION

For the foregoing reasons, the City of Gatlinburg's motion for summary judgment [R. 32]

is **GRANTED** and this matter is **DISMISSED** in its entirety.


_____
**UNITED STATES DISTRICT JUDGE**